GALLIAN WELKER & BECKSTROM, L. C.
Russell J. Gallian, #1144
Christopher A. Lund, #14074
965 East 700 South, Suite 305
St. George, Utah 84790
Telephone: (435) 628-1682
Facsimile:  (435) 628-9561
Email: rgallian@utahcase.com
Email: clund@utahcase.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID P. D'AMATO <br><br> Plaintiff, <br><br> vs. <br><br> DAVID FARRIER, DYLAN REEVE; MPI MEDIA GROUP A/K/A MALJACK PRODUCTIONS, INC.; CARTHEW NEAL; JUSTIN PEMBERTON; DAVID W. STARR D/B/A TICKLE FILMS; and JANE DOES I-V, ABC CORPORATIONS I-V, and XYZ PARTNERSHIPS I-V, <br><br> Defendants. | **COMPLAINT** <br><br> Case No.  2:16-cv-00177-PMW <br><br> Judge:   Paul M. Warner |

Plaintiff, DAVID P. D'AMATO hereby complains and alleges against David Farrier, Dylan Reeve, MPI Media Group a/k/a Maljack Productions, Inc., Carthew Neal, Justin Pemberton, and David W. Starr (collectively "Defendants") as follows:

///

///

1

## INTRODUCTION

This action asserts a claims of defamation/defamation per se and false light- invasion of privacy, based on: the production, airing, screening, release and non-privileged publication of the film entitled "*Tickled*," which was screened at the Sundance Film Festival in Park City, Utah on January 28, 2016. This film maliciously defames Plaintiff, David D'Amato ("D'Amato") per se, by referring to him as a criminal and a sexual deviant who continues to break the law. The film also accuses the Plaintiff and his deceased father George G. D'Amato, a well-respected giant in the international legal industry, of political and judicial corruption.

## THE PARTIES

1.      Plaintiff, David P. D'Amato ("D'Amato") is a natural person and a citizen of New York State.

2.      Upon information and belief, Defendant, David Farrier ("Farrier"), is a natural person, foreign national, a citizen of New Zealand, and a co-creator of the film entitled "Tickled."

3.      Upon information and belief, Defendant, Dylan Reeve ("Reeve"), is a natural person, foreign national, a citizen of New Zealand and a co-creator of the film entitled "Tickled."

4.      Upon information and belief, Defendant, Carthew Neal ("Neal"), is a natural person, foreign national, citizen of New Zealand and a producer of the film entitled "Tickled."

5.      Upon information and belief, Defendant, Justin Pemberton ("Pemberton"), is a natural person, foreign national, citizen of New Zealand and an executive producer of the film entitled "Tickled."

///

///

2

6.      Upon information and belief, Defendant, David W. Starr d/b/a Tickle Films ("Starr") is a natural person, a citizen of the State of California and makes a paid appearance in the film entitled "Tickled."

7.      7. MPI Media Group a/k/a Maljack Productions, Inc. is a foreign corporation incorporated under the laws of the State of Illinois, and an associate producer/distributor and/or financier of the film entitled "Tickled."

8.      Fictitious Defendants Jane Does I-V, ABC Corporations I-V, and XYZ Partnerships I-V are individuals and entities, whose identities currently are unknown, who may have caused or contributed to the conduct complained of herein. When the true names of such fictitious Defendants are discovered, they will be substituted into this action accordingly.

## JURISDICTION AND VENUE

9.      The sum in controversy exceeds $75,000.

10.     This Court has jurisdiction over the Defendants pursuant to 28 USC §1332(a)-diversity of citizenship.

11.     Venue is proper under 28 USC §1391 as none of the Defendants resides in this state but a substantial part of events giving rise to the claim occurred in Summit County, Utah.

## FACTUAL ALLEGATIONS

12.     Farrier was a New Zealand based contract TV and radio reporter who allegedly specialized in the reporting of the weird and bizarre side of life prior to his unexpected departure from that work (mostly with News 3 New Zealand) in or about January 2016.

13.     Upon information and belief, through Farrier's endeavors, he stumbled upon an online video involving "competitive endurance tickling."

3

14.     Farrier sought to uncover the identity of the people and the participants involved in the "competitive endurance competitions" depicted in the online video.

15.     Tickling competitions, although considered bizarre by some, do not depict nude models, sexual acts, are not homosexual fetish content material nor, do they involve pornographic depictions.

16.     As Farrier's investigation proceeded, he decided to make a film about "competitive tickling," but his focus shifted from explanatory to defamatory and expository endeavors.

17.     Through the guise of a News Reporter for New Zealand's TV 3, Farrier sought out the producers of tickling films and eventually focused on a company called Jane O'Brien Media ("Jane O'Brien Media").

18.     Sometime in 2014, Farrier openly accused Jane O'Brien Media of not hiring gay employees. However, many of the people working for Jane O'Brien Media are outwardly gay, including Kevin Clarke, the current videographer for Jane O'Brien Media.

19.     Astonished by Farrier's accusations of gay bias, in 2014, representatives of Jane O'Brien Media, including Clarke, flew to New Zealand to engage in what was declared by Farrier to be an "off the record" interview. However, portions of this interview appear in the film "Tickled."

20.     Jane O'Brien Media representatives agreed to the interview with Farrier to correct misunderstandings, and to basically explain that "competitive tickling" is not sexual in nature, is non-homophobic, contains no homosexual fetish content, that paid models are fully clothed, and that although bizarre, there was nothing deviant taking place.

21.     During the 2014 meeting in New Zealand, Farrier made accusations to Clarke that Plaintiff, D'Amato, was the "person behind" Jane O'Brien Media. Farrier specifically stated to Clarke, that "he was aware of D'Amato's past, that he [D'Amato] is a criminal and we are going to get him."

22.     Plaintiff D'Amato is not a member, principal, investor, nor does he have any association or ownership interest in Jane O'Brien Media, thus the statements made by Farrier are false. Clarke explicitly denied any association with D'Amato and adamantly informed Farrier that D'Amato is not associated with Jane O'Brien Media.

23.     Upon information and belief, Farrier's false statement was made based upon D'Amato prior contact with David Starr, who appears in the "Tickled" film.

24.     In or around 1997-98, Starr contacted D'Amato and asked him to advertise for tickling models. D'Amato posted advertisements on certain school servers and was eventually convicted for a misdemeanor computer fraud and abuse related crime in Massachusetts in 2001.

25.     D'Amato's conviction had no connection to: pornography, pedophilia, abuse of minors or sexually deviant actions. In sum, no finding of moral turpitude was made on the court record; in fact, United States Attorney Michael Sullivan explicitly excluded such as any part of the case.

26.     The statements made by Farrier to Clarke that D'Amato was a member of Jane O'Brien Media; that D'Amato was a criminal, were made with malice and with the intent of destroying D'Amato's reputation and to prompt a new FBI investigation into D'Amato's current activities.

///

5

27.     The statement that Farrier was going to "get" D'Amato evidences the origins of

Farrier's malice and, upon information and belief, an FBI investigation was prompted by Farrier

but no evidence of crime was found nor any interest by law enforcement expressed.

28.     On January 28, 2016, the film "Tickled" was screened at the Sundance Film

Festival in Park City Utah and was seen/published and overheard by over 100 people (third-

parties). It was also aired at least seven more times at the Festival.

29.     The film contains the following false, non-privileged statements made and/or

published by Farrier and the other named Defendants. The statement were made with malice with

the intent to cause an FBI investigation of plaintiff, to destroy his reputation, to accused him of

ongoing criminal conduct, to accused him of pedophilia and to inflict emotional distress upon his

person:

> **a. Tickling models "will not talk to Farrier because they**
> **fear reprisals from David D'Amato," thus, falsely accusing**
> **D'Amato of the crimes of extortion, threats of bodily harm,**
> **and/or abusing judicial process.**
>
> **b. In the film, Debbie Scoblionkov and Hal Karp states**
> **"when charges were made known to Fordham University,**
> **he [D'Amato] was immediately thrown out." This statement**
> **is not true, as D'Amato remained at Fordham for most of**
> **one academic year then** transferred **to Hofstra University**
> **where he graduated in February of 2011 with a J.D.**
>
> **c. The film claims D'Amato "had minors filmed being**
> **tickled and that he worked at 6 different schools in 6**
> **years," thus falsely accusing plaintiff of abusing minors,**
> **pedophilia, child pornography and abuse of his students**
> **while employed by a school. D'Amato was never dismissed**
> **nor asked to leave from his school positions for**
> **inappropriate behavior.**
>
> **d. The film comments, "Imagine having him near your**
> **children." thus falsely accusing D'Amato of being a child**

6

molester, abusing children, or harming children.

e. The films states that David D'Amato finished his sentence "in prison." The statement is false as D'Amato was sentenced to six months in a half-way house, he never served time in "prison." During D'Amato stay in a halfway house, he was transferred to a satellite camp, located outside of a federal prison, for his own safety, while the United States Secret Service investigated a completely separate matter. Mr. D'Amato concluded his sentence on February 3, 2003, when Federal <u>probation</u> ended.

f. The film makes repeated references to D'Amato and Lynch, the law firm established by plaintiff's deceased father, George G. D'Amato.  The film accuses George G. D'Amato of using money and prestige to illicitly influence the outcome of a judicial court proceeding, thus falsely defaming the business reputation of the law firm, any trust established in George D'Amato's name, plaintiff and the deceased.

g. Within the film, David W. Starr claims he dissociated himself with Terri Tickle a/k/a David D'Amato because she was "putting online footage of the guys that he (David W. Starr) filmed without their permission. The film shows footage with the model's faces blurred out. Then, David W. Starr show letters purportedly from Terri Tickle disparaging him. When asked why these letters were sent, David W. Starr said, "She was probably sitting in front of a computer <u>shooting cocaine up her ass</u> [sic]." It is a matter of record that Terri Tickle is one of the online aliases of David D'Amato and therefore, David W. Starr falsely accuses the plaintiff of being a cocaine addict and committing drug related crimes.

h. In the film, Farrier pulls model Jordan Schillachi aside and asks him in hushed tones "do you know the name David D'Amato." The 7 foot cage fighter starts shaking with fear Farrier calms him down and Jordan says if David D'Amato were here he would punch him out (threatened bodily harm). Thus, implying that D'Amato abused Mr. Schillachi.

i. The film asks "where does all of D'Amato's money to

exploit young men come from?" The film then shows a TD Bank statement on the screen, briefly showing David D'Amato's name with a $30,000,000.00 balance and scribbled next to it the name of a George D'Amato Trust. Farrier's voice over states, "He also inherited a large amount of money from his mother." Thus, the film thus falsely accuses D'Amato and the Trust of using family money to exploit young men and children. The statements are false and the records shown in the movie are false.

j. Farrier contacted D'Amato's stepmother and asks her about the tickling and in the film she heard saying that was years ago and Farrier "says it never stopped." D'Amato's stepmother gasps and says "I had no idea. The stepmother states that she believed "that he [D'Amato] was either asexual or a homosexual and that she at one point brought it up to George and asked him if he would be disappointed but he would get over it." She then says that "after all he wanted grandchildren you can understand that can't you?" Thus, the film and D'Amato's stepmother falsely accused plaintiff of being asexual and/or homosexual and that such behavior is deviant.

k. The Documentary ends with Jane O'Brien Media, and by implication, David D'Amato, "still shooting models" and "David D'Amato is still terrorizing young men."

30.    The false statements in Paragraph 29, were published to third parties (audience) at the Sundance Film Festival by the Defendants without privilege, with malice, and made with the intent of destroying and personally harming the reputation of plaintiff.

31.    The publishing of the statements by Defendants was at minimum, negligent and/or reckless because the Defendants knew, or should have known, that plaintiff was not associated with Jane O'Brien Media, and there is no credible evidence that plaintiff engaged or is continuing to engage in any of the criminal conduct of which he is being accused. Clarke, a representative of Jane O'Brien Media specifically told Farrier that D'Amato was not associated with Jane O'Brien Media.

32.     A review posted in the Hollywood Reporter on January 1/24/16 states the film "identif[ies] not just a devious and destructive manipulator but egregious failures of the legal system. By the time *Tickled* fades out, no one is laughing," thus evidencing that the public viewed the statements published in the film, in the same manner as complained of herein.

33.     Heraldextra.com posted an article on January 24, 2016 on its website entitled 'Tickled' documentary exposes strange, criminal world of 'competitive endurance tickling.'[1] Thus, evidencing that the public viewed the statements published in the film, in the same manner as complained of herein and therefore is clear D'Amato is accused of ongoing criminal activity.

## FIRST CAUSE OF ACTION
### (Defamation per se and per quod/Libel per se and per quod)

34.     The above paragraphs are hereby repeated and realleged, as if fully set forth herein.

35.     As set forth above, Farrier and the other named Defendants have made false and defamatory statements in the "Tickled" film about Plaintiff– to wit, calling him a continued criminal, abuser of young men (minors) and children, a cocaine addict and that he and deceased father were involved in a judicial conspiracy. Such defamatory words constitute defamation per se because they charge criminal conduct.

36.     Such defamatory words also constitute defamation per se because they charge conduct that is incompatible with the exercise of a lawful business, trade, profession, or office.

///

---

[1] http://www.heraldextra.com/entertainment/movies/sundance/tickled-documentary-exposes-strange-criminal-world-of-competitive-endurance-tickling/article_b2ccd164-4e25-55dd-badc-d221b7eb308f.html.

37.     The defamatory words in the film are of such common notoriety that damage can be presumed from the words alone.

38.     Defendants published said unprivileged defamatory words at the Sundance Film festival on January 28, 2016 to over 100 Third-Parties at least seven times.

39.     Defendants acted intentionally, and/or with reckless disregard as to the truth or falsity of their claims, and/or negligently in publishing the defamatory statement since they were out to "get" D'Amato, despite being advised that D'Amato was not a part of Jane O'Brien Media.

40.     Because of the per se nature of said defamatory statements, Plaintiffs need not prove special damages.

41.     Nevertheless, the defamatory (per se) statements of the collective Defendants, jointly and severally, in directing, producing, financing, distributing, and publishing the false defamatory statements have damaged Plaintiffs' reputation, caused him mental stress/harm, he continues to suffer from insomnia, requiring him to seek medical treatment, fear of reprisals and have damaged his ability to conduct a lawful business, and acquire other monetary proceeds.

42.     Plaintiff is entitled to damages that were caused by Defendants' actions, including but not limited to, general, special (for injuries alleged in the previous paragraph), consequential, incidental, and punitive damages.

43.     Furthermore, Defendants should be enjoined from any further communication of the false statements about Plaintiff, including distributing the "Tickled" film.

///

///

///

10

## SECOND CAUSE OF ACTION
### (Invasion of Privacy- False Light)

44.     The above paragraphs are hereby repeated and realleged, as if fully set forth herein.

45.     Defendants have made statements and published statements about Plaintiff that place him in a false light before the public.

46.     Defendants' statements include, but are not limited to, statements that Plaintiff has worked around children while employed by a school, was sentenced for a crime over 15 years ago, left his studies at Fordham University, was not married or in a relationship, and Plaintiff receives money from a Trust fund set up by his father.

47.     Defendants took these statements about Plaintiff and placed Plaintiff before the public in a false light by implying, suggesting, and, in some instances, asserting that Plaintiff was a continued criminal, abuser of young men (minors) and children, a cocaine addict, that he and his deceased father were involved in a judicial conspiracy, that Plaintiff was kicked out of Fordham University, that he is a sexual deviant, and that the George D'Amato Trust is used to exploit young men and children.

48.     The false light Defendants placed Plaintiff in would be highly offensive to a reasonable person;

49.     Defendants knew the falsity of the claims against Plaintiff or acted in reckless disregard as to the falsity and the false light in which Plaintiff would be placed.

50.     As a result of Defendants' actions, Plaintiff has sustained injury to his reputation, caused him mental stress/harm, he continues to suffer from insomnia, requiring him to seek medical treatment, he suffers from fear of reprisals, and Defendants have damaged his ability to conduct a lawful business and acquire other monetary proceeds.

11

51.     Defendants are jointly and severally liable for the injuries they caused Plaintiff, and Plaintiff is entitled to damages including, but not limited to, general, special (for injuries alleged in the previous paragraph), consequential, incidental, and punitive damages.

52.     Furthermore, Defendants should be enjoined from any further communication of the false statements about Plaintiff, including distributing the "Tickled" film.

## JURY DEMAND

Plaintiff David D'Amato is entitled to try his case to a jury of his peers, and he hereby demands the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.  For general damages resulting from all of Defendants' actions in amounts to be proved at trial;

B.  For consequential, incidental, and special damages suffered by Plaintiff from all of Defendants' actions in amounts to be proved at trial;

C.  For punitive damages resulting from all of Defendants' actions;

D.  For injunctive relief;

E.  For legal fees and costs incurred with this litigation;

///

///

12

F.  For pre- and post-judgment interest as allowed by law;

G.  For any further relief the Court deems just and proper.


DATED this 3rd day of March, 2016

GALLIAN WELKER & BECKSTROM, L.C.


Russell J. Gallian
Christopher A. Lund
*Attorneys for Plaintiffs*